Eugene HORTON, Petitioner,

v.

James R. IRVING, Past Chairman of the Illinois Prisoner Review Board; Joseph McCombs, Present Chairman of the Illinois Prisoner Review Board; Richard W. DeRobertis, Warden, Stateville Correctional Center, Respondents.

UNITED STATES of America, ex rel., Phillip Lewis JACOBS, Petitioner,

v.

Richard DeROBERTIS, Warden, Stateville Correctional Center; Illinois Parole and Pardon Board (Prisoner Review Board), Respondents.

Nos. 82 C 2569, 82 C 4356.

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1982.

Eugene Horton, Phillip Lewis Jacobs, pro se.

David E. Bindi, Michael Weinstein, Terence Madsen/Michael Weinstein, Asst. Attys. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

These two habeas corpus petitions come before the Court on respondents' motions for summary judgment, which in each case have been supplemented with motions to dismiss. Both petitioners allege that the denial of their applications for parole release deprived them of their rights under the Due Process and *Ex Post Facto* Clauses of the United States Constitution. Because of the identity of the issues involved in these two actions, the Court has consolidated them for purposes of ruling on the pending motions.

### I. JACOBS' PETITION

The petitioner in 82 C 4356, Phillip Lewis Jacobs ("Jacobs"), was convicted of murder in the Circuit Court of Du Page County, Illinois and sentenced to a term of 45 to 65 years imprisonment. The murder was committed on June 20, 1970. *See People v. Jacobs,* 44 Ill.App.3d 290, 2 Ill.Dec. 601, 357 N.E.2d 821 (1976). Jacobs appeared before the Illinois Prisoner Review Board ("Board") for parole release consideration in 1979, 1980, and 1981. Jacobs alleges that on each occasion the Board denied him parole for the reason that "your release at this time would deprecate the seriousness of your offense and promote disrespect for the law." Ill.Rev.Stat. 1981, ch. 38, § 1003–3–

5(c),[1] which first took effect on January 1, 1973, requires the Board to deny parole to a prisoner if it determines that release at that time would deprecate the seriousness of his offense.

After the most recent hearing, which took place on June 3, 1982, the Board again denied parole to Jacobs, giving the following reasons for its decision:

> The Board, considering all factors in your case, is denying parole at this time because of the following reasons:

> The Board has heard your case and rendered its decision in accordance with the statute in effect at the time of your offense.

> The Board, having given full consideration to all the facts and circumstances in this case, is of the opinion that the risks involved in granting parole outweigh the factors in favor of granting parole.

Jacobs contends that these reasons, as well as those given for the denial of parole in the three preceding years, violated the *ex post facto* prohibition and denied him minimum due process. He requests the Court to issue the writ of habeas corpus releasing him from prison.

## II. HORTON'S PETITION

Petitioner in 82 C 2569,[2] Eugene Horton ("Horton"), was convicted of murder in the Circuit Court of Cook County, Illinois and sentenced to a term of 100 to 150 years imprisonment. The murder was committed on March 21, 1971. *See People v. Horton*, 14 Ill.App.3d 957, 304 N.E.2d 21 (1973). Horton first appeared before the Board for parole release consideration on March 3, 1981. At that time, Horton was denied parole on the basis of the length of his sentence and the nature of his offense.

On March 3, 1982, Horton again appeared before the Board for parole release consideration. The Board denied parole giving verbatim the same reasons that it gave Jacobs for the denial of his request for parole. Like Jacobs, Horton contends that the Board's action denied him due process and violated the prohibition against *ex post facto* laws. As relief he seeks a new parole hearing that accords with the requirements of the Constitution.

## III. MOTION TO DISMISS JACOBS' PETITION

Respondents move to dismiss Jacobs' petition on the ground that it duplicates a class action suit currently pending before Judge Prentice H. Marshall. They contend that since Jacobs is a member of the class certified by Judge Marshall, his claim for relief is subsumed by that action. They urge that interests of judicial and administrative economy and uniformity favor dismissal of his petition without prejudice to his rights under the class action in *Burbank v. Director, Department of Corrections*, 80 C 3325 (N.D.Ill. Amended Complaint filed Mar. 24, 1982).

*Burbank*, like the two actions before the Court, asserts claims arising out of the Seventh Circuit's decision in *Welsh v. Mizell*, 668 F.2d 328 (7th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). *Welsh* held that exclusive reliance upon the statutory criterion authorizing denial of parole because of the seriousness of a prisoner's offense contravenes the *ex post facto* clause as to those inmates who committed their crimes prior to 1973. *Burbank* seeks an injunction or issuance of a conditional writ of habeas corpus directing the Board to adopt explicit criteria to guide the decision-making process in the post-*Welsh*

---

**1.** (c) The Board shall not parole a person eligible for parole if it determines that:

 (1) there is a substantial risk that he will not conform to reasonable conditions of parole; or

 (2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or

 (3) his release would have a substantially adverse effect on institutional discipline.

**2.** Horton commenced his action as a petition for a writ of mandamus pursuant to 28 U.S.C. §§ 1361 and 1651. Applying the liberal standards of construction accorded pro se pleadings, the Court construed the action as a habeas corpus petition in its order of May 3, 1982.

hearings accorded to the members of the class. *Burbank* asserts that adoption of explicit criteria is constitutionally required and necessary to ensure that the Board does not continue its practice of denying parole on the basis of the *ex post facto* policies condemned in *Welsh.*

While there admittedly is some similarity between the issues raised on behalf of the class in *Burbank* and those raised by Jacobs, they are not identical. The relief Jacobs seeks—release—is broader than the injunctive relief sought by the class in *Burbank.* Moreover, unlike Jacobs, the plaintiff in *Burbank* does not directly challenge on due process grounds the adequacy of the reasons given for the denial of his parole, even though those reasons are exactly the same as the reasons given to Jacobs. The issue in *Burbank* is whether *Welsh* or due process compels the Board to issue specific criteria for parole release decisions. Resolution of this issue does not necessarily dispose of the issues raised by Jacobs—whether a particular set of reasons for parole denial comply with due process or violate the *ex post facto* clause. Since the issues presented in *Burbank* differ from those asserted by Jacobs, Jacobs' rights are not fully protected by his membership in the *Burbank* class. Under these circumstances, dismissal of the individual petition brought by Jacobs is not warranted. *See Crawford v. Bell,* 599 F.2d 890, 893 (9th Cir.1979).

## IV. MOTION TO DISMISS HORTON'S PETITION

■ Respondents seek to dismiss Horton's petition on grounds of mootness. They state that the Board has granted Horton a rehearing on his application for parole which is scheduled for January 6, 1983. Relying on *Bradford v. Weinstein,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), respondents contend that the petition is now moot because Horton has received all the relief he sought.

The fact that the Board has scheduled Horton for a new hearing does not render this action moot. Horton seeks more than just a new parole hearing. He seeks a new hearing that comports with due process and that does not consider criteria foreclosed by the *ex post facto* clause. Whether the newly scheduled hearing will adequately safeguard Horton's constitutional rights is speculative. The possibility that Horton will again be denied parole for improper or inadequate reasons is sufficient to satisfy the case or controversy requirement of Article III. *See Chapman v. Kleindienst,* 507 F.2d 1246, 1249–50 (7th Cir.1974).

The instant case is distinguishable from *Bradford, supra.* In *Bradford,* the prisoner had not only been released on parole, but discharged from custody. Therefore, at the time his case came before the Supreme Court, he no longer had any present interest affected by parole release procedures. Since Horton is still subject to the parole policies he challenges in his petition, his case is not moot.

## V. MOTIONS FOR SUMMARY JUDGMENT

■ The claims asserted in the petitions are premised primarily on two recent decisions of the Seventh Circuit. Relying on *Welsh v. Mizell, supra,* both Jacobs and Horton contend that their parole release hearings violated the *ex post facto* clause. Additionally, relying on *United States ex. rel. Scott v. Illinois Pardon and Parole Board,* 669 F.2d 1185 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982), petitioners assert that the reasons given for the denial of their applications for parole release were so vague as to violate due process. Finding that petitioners are entitled to relief on due process grounds, the court does not reach the petitioners' *ex post facto* claims.

A state has no duty to establish a parole system, and where such a system has been implemented, a prisoner has no constitutional or inherent right to be paroled. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). Nonetheless, as *Greenholtz* recognized, a state statute governing parole may provide an inmate with a legitimate expectation of

release thereby giving rise to a liberty interest entitled to protection under the due process clause. In *Scott, supra,* the Seventh Circuit examined the relevant Illinois statutes and regulations governing parole to determine if they created a liberty interest subject to considerations of due process. Applying the analysis employed in *Greenholtz,* the court concluded that Illinois law creates "a legitimate expectation of parole entitled to some measure of constitutional protection." *Scott, supra,* 669 F.2d at 1190. The court further held that a statement of reasons for the denial of parole is included among the minimum procedural protections required by due process in the context of parole release determinations. *Id.* at 1192.

Respondents argue that *Scott* is not controlling precedent here. Citing *Welsh* as authority, they contend that the court must examine the parole statutes in effect at the time petitioners committed their crimes to determine if due process applies. They maintain that the statutes governing parole at that time, unlike those considered in *Scott,* did not purport to limit the Board's discretion thereby creating a protectible liberty interest in parole release. Absent a legitimate expectation of parole release under the relevant statutes, petitioners, according to respondents' reasoning, have no constitutional right to due process safeguards such as an adequate statement of reasons for parole denial.

Respondents' argument is built on a fallacious premise. Nothing in *Welsh* requires the Board to consider petitioners for parole under the statutes in effect at the time of their crimes. The broad reading of *Welsh* urged by respondents finds support neither in the language of *Welsh* nor the cases interpreting the ex post facto clause.

The issue before the court in *Welsh* was whether the Board could deny petitioner parole on the sole basis of the second of three criterion contained in the 1973 revisions to the parole statutes. The court found that this criterion, based on consider-

ations of general deterrence, imported a new factor into the parole release process that could not have had decisive weight in decision-making under prior law. The court found that reliance on this factor alone as a reason for parole denial substantially disadvantaged petitioner. Therefore, retroactive application of the second criterion to petitioner, who had committed his crime prior to 1973, violated the ex post facto clause. The court remanded the case back to the Board "for reconsideration under the relevant guidelines" stating:

> We hold only that the constraints on the Parole Board's discretion in Welsh's case must be those contained in the statute and regulations that were in effect in 1962, not those subsequently enacted.

*Id.* at 332.

*Welsh* does not foreclose the Board from applying the present parole statute to prisoners who committed offenses prior to 1973. It only forecloses exclusive application of factors based on general deterrence, such as the seriousness nature of the parole applicant's offense. As noted in that opinion, the other two criteria contained in the present statute "invite the Parole Board to look at many of the same factors as under previous law." *Id.* at 331. By implication, denial of parole on the basis of one of those criteria, alone or in conjunction with other reasons unspecified in the statute,[3] does not contravene the ex post facto clause.

■ The ex post facto provision of the Constitution forbids enactment of laws that enhance the punishment of a crime after its commission. *See Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937). It does not, however, prohibit a state from enacting changes in its criminal statutes. That this is not the purpose of the ex post facto law was made clear in *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977):

> [T]he inhibition upon the passage of *ex post facto* laws does not give a criminal a right to be tried, in all respects, by the

---

**3.** In *Scott,* the Seventh Circuit interpreted the Illinois parole statute to allow parole authorities to deny parole for reasons not statutorily specified if joined with one of the reasons listed in the statute. *Scott,* 669 F.2d at 1189.

law in force when the crime charged was committed. The constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.

*Id.* at 293, 97 S.Ct. at 2298 (citations omitted).

In *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court spelled out the proper procedures for remedying an *ex post facto* violation such as the one discussed in *Welsh.* The Court there noted that when a case is remanded to the state to apply the law in place at the time of the prisoner's offense, "only the *ex post facto* portion of the new law is void as to petitioner, and therefore any severable provisions which are not *ex post facto* may still be applied to him." *Id.* at 37 n. 22, 101 S.Ct. at 968 n. 22.

In light of *Weaver,* this court concludes that the Board must consider petitioners for parole under the Illinois statutes and regulations currently governing parole release decisions except to the extent they violate the *ex post facto* clause. Therefore, under the due process analysis applied in *Scott,* petitioners are constitutionally entitled to a statement of reasons for the denial of parole. The question then is whether the Board's stated reason for denying conditional release to Horton and Jacobs—that the risks involved in granting parole outweigh the factors in favor of granting parole—is constitutionally sufficient. *Scott* provides guidance for answering this question.

As in the cases now before the court, the petitioner in *Scott* challenged the constitutional adequacy of the reasons given for denial of his parole. In addressing this issue, the court in *Scott* reaffirmed the test it had previously adopted in *United States*

 *ex rel. Richardson v. Wolff,* 525 F.2d 797 (7th Cir.1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976).[4] That test, taken from the Second Circuit's opinion in *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925 (2d Cir.), *vacated as moot,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), was set out as follows:

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision ... and the essential facts upon which the Board's inferences are based.

*Scott, supra,* 669 F.2d at 1190 (quoting *Johnson* ).

In *Ware v. Kaufman,* No. 80 C 3209 (N.D. Ill. June 3, 1982), Judge Hubert L. Will applied the standard enunciated in *Scott* to determine the constitutional sufficiency of precisely the same statement of reasons for parole denial as were given to Jacobs and Horton. Judge Will concluded that:

> the Board's decision is deficient because it does not state the essential facts on the basis of which it denied parole. We cannot determine whether it denied parole on valid grounds or on grounds forbidden by *Welsh v. Mizell* .... Its incantation of "the facts and circumstances of this case" and "the risks involved in granting parole" is meaningless. It points to no specific facts, circumstances or risks. Particularly in this case, where the only reason heretofore given to deny parole has been held to be invalid, the failure to

---

4. *Richardson,* decided prior to the Supreme Court decision in *Greenholtz,* held that the mere existence of a state parole release system invokes the protection of the Due Process Clause of the Fourteenth Amendment. As the court in *Scott* noted, "*Greenholtz* explicitly rejected the underlying rationale for [that] hold-

ing." 669 F.2d at 1187. Thus, the court of appeals in *Scott* found it necessary to reinstate the standard for assessing the constitutional sufficiency of reasons for parole denial after it held that due process applies to the Illinois parole release decisions.

state the specific grounds for the parole denial suggests the inference that parole was denied for an impermissible reason or for no reason at all.

*Id.,* Slip. op. at 2–3.

 Although not bound by *Ware,* this court finds Judge Will's reasoning persuasive and, for the reasons stated in *Ware,* concludes that the statement of reasons given to Jacobs and Horton did not comply with minimum due process requirements. Therefore, the court finds it necessary to remand[5] petitioners back to the Illinois Prisoner Review Board for a new parole hearing in compliance with *Scott v. Illinois Parole and Pardon Board, supra,* and *Welsh v. Mizell, supra.*[6]

## VI. CONCLUSION

In conclusion, the court denies respondents' motions to dismiss and motions for summary judgment and grants petitioners' applications for habeas corpus relief. The Illinois Prisoner Review Board shall, within sixty days, accord petitioners a new parole hearing consistent with the court's memorandum opinion and order.

It is so ordered.

---

[5]. Remand rather than release is the proper remedy. *Welsh, supra,* 668 F.2d at 333. Therefore, Jacobs' request for release cannot be granted.

[6]. Although the court does not decide the *ex post facto* issues raised in the petition, it finds it necessary to remand for a new hearing in accordance with *Welsh* for two reasons. First, given the lack of specificity in the reasons given for parole denial, the court cannot ascertain if the Board truly relied on criteria other than those foreclosed by Welsh. Second, the Board's ambiguous statement that it "rendered its decision in accordance with the statute in effect at the time of your offense" appears to indicate that the Board was under the mistaken apprehension that *Welsh* required it to consider petitioners for parole under the statutes in effect in 1970 and 1971.