William A. KROLL, Plaintiff–Appellee,

v.

BOARD OF TRUSTEES OF the UNIVERSITY OF ILLINOIS, an Illinois Public Corporation, Defendant–Appellant.

Nos. 89–3414, 90–1075.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1991.

Decided June 17, 1991.

Rehearing and Rehearing In Banc Denied
July 22, 1991.

---

Marvin Gerstein, Urbana, Ill., for plaintiff-appellee.

Edward H. Rawles, Reno, O'Byrne & Kepley, Champaign, Ill., for defendant-appellant.

Before WOOD, Jr., COFFEY and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

William Kroll, a former employee of the University of Illinois Athletic Association, took issue with the timing of and reasons for his discharge. He filed this suit on January 6, 1989, seeking damages from the Athletic Association, the Board of Trustees of the University of Illinois ("Board"), and Neale Stoner, individually and in his official capacity as director of the Athletic Association ("Stoner"). The district court concluded that the Board was entitled to eleventh amendment immunity and for this reason, as well as others not important to this decision, Kroll's complaint was dismissed on June 13, 1989, with leave to refile.

When Kroll filed an amended complaint on July 18, 1989, he requested relief under 42 U.S.C. § 1983, as well as various state law theories, and named as defendants only the Athletic Association and Stoner. To his surprise, however, the Athletic Association no longer existed. On June 29, 1989, the Illinois General Assembly had passed special legislation allowing the Athletic Association, a not-for-profit corporation, to merge into the Board. Public Act 86–6, 1989 Ill. Legis.Serv. 299, 300–01 (West) (codified at ILL.REV.STAT. ch. 144, para. 28d). The two entities had thereafter entered into a merger agreement and filed articles of merger with the Illinois Secretary of State. On June 30, 1989, with the Secretary's issuance of a certificate of merger, the Board became the surviving corporation and the Athletic Association ceased to exist as a separate entity. ILL.REV.STAT. ch. 144, paras. 28d(c)(1), (d)(2); Plan of Merger ¶ 1.3.

The Board, now appearing as the surviving entity of the merger, reasserted its eleventh amendment immunity from suit. The district court rejected this argument by means of an order entered on October 4, 1989, and a supplemental order entered on December 12, 1989. These interlocutory orders were immediately appealable under the rationale set forth in *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985), and as a result we have appellate jurisdiction to decide the question of law presented by the Board's timely notices of appeal. *Accord Chrissy F. ex rel. Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 848–49 (5th Cir.1991) (denial of motion to dismiss on eleventh amendment grounds is immediately appealable); *Schopler v. Bliss*, 903 F.2d 1373, 1376–78 (11th Cir.1990) (same); *Dube v. SUNY*, 900 F.2d 587, 594 (2d Cir.) (same), *cert. denied on other issues sub nom. Wharton v. Dube*, 59 U.S. L.W. 3278 (U.S. Oct. 9, 1990); *Coakley v. Welch*, 877 F.2d 304, 305 (4th Cir.) (same), *cert. denied*, — U.S. —, 110 S.Ct. 501, 107 L.Ed.2d 503 (1989); *see also R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 432 (7th Cir.1991). *But see Libby v. Marshall*, 833 F.2d 402, 404–07 (1st Cir.1987) (state officials sued in their official capacity for injunctive relief cannot make interlocutory appeal from district court's denial of motion to dismiss on eleventh amendment grounds).[1]

The eleventh amendment to our Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. That language seems plain enough, but eleventh amendment jurisprudence has not precisely followed the text of the amendment. Heavily influenced by the judicially created

---

1. Neither of the parties before this court appears overly concerned that Kroll's amended complaint attempts to sue an entity that, as a technical matter, no longer exists. This interlocutory appeal may not be the proper place to address that anomaly, however, *see K.H. ex rel.*

*Murphy v. Morgan*, 914 F.2d 846, 855 (7th Cir. 1990) (discussing doctrine of pendent appellate jurisdiction), and, in any event, our decision on the eleventh amendment issue allows us to side-step the matter.

doctrine of sovereign immunity, *see Port Auth. Trans–Hudson Corp. v. Feeney,* —— U.S. ——, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990) [hereinafter *PATH*], the Supreme Court has broadened the amendment's language in some respects and narrowed it in others.

Today, eleventh amendment issues may arise whenever a private party files a federal lawsuit against a state, a state agency, or a state official. The effect of the amendment may differ, however, depending on the category of defendant. *Brunken v. Lance,* 807 F.2d 1325, 1328–29 (7th Cir.1986). We therefore begin an eleventh amendment analysis by looking at the caption of the lawsuit.

■ Private party suits against a state are easy to identify and the analysis is relatively straightforward. Put simply, a state may claim immunity from suit in federal court and must be dismissed from the litigation unless there exists one of two well-established exceptions. *See id.; Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). First, a state may by unequivocal language waive the protections of the eleventh amendment and thereby consent to suit in federal court. *See, e.g., Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Second, Congress may by unequivocal language use its enforcement powers under the fourteenth amendment to abrogate the states' eleventh amendment immunity. *See id.; see also id.* at 246, 105 S.Ct. at 3149 ("When Congress chooses to subject the States to federal jurisdiction, it must do so specifically.") (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) [hereinafter *Pennhurst II*] (citing *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

■ State agencies are treated the same as states. *See Pugh,* 438 U.S. at 781–82, 98 S.Ct. at 3057–58; *Gleason v. Board of Educ.,* 792 F.2d 76, 79 (7th Cir.1986). Indeed, a state agency *is* the state for purposes of the eleventh amendment. *Davidson v. Board of Govs.,* 920 F.2d 441, 442

(7th Cir.1990); *see also Pennhurst II,* 465 U.S. at 100, 104 S.Ct. at 907 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the eleventh amendment."). This is so, moreover, "regardless of the nature of the relief sought." *Id.; Gleason,* 792 F.2d at 79. The only new issue, therefore, is whether a particular defendant is really a state agency, i.e., whether an entity is more like " 'an arm of the State' " than a county or city. *Kashani v. Purdue Univ.,* 813 F.2d 843, 845 (7th Cir.) (quoting *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977)), *cert. denied,* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); *see also Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 n. 54 (1978).

■ State officials present a more complicated analysis, but one that is set forth rather neatly in *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Suits against state officials are sometimes permissible, and the key inquiry is whether the state is " 'the real, substantial party in interest.' " *Pennhurst II,* 465 U.S. at 101, 104 S.Ct. at 908 (citing *Ford Motor Co. v. Department of Treas.,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). Personal-capacity suits raise no eleventh amendment issues even though an official might have the requisite nexus to the state in order for his or her actions to be labelled state action. *See Graham,* 473 U.S. at 165–67, 105 S.Ct. at 3104–07. A victory in such a suit, however, is a victory against only the individual defendant; an award of damages may be executed only against that official's personal assets. *Id.* at 165–66, 105 S.Ct. at 3104–05. Official-capacity suits, in contrast, are deemed to be against the " 'entity of which an officer is an agent.' " *Id.* at 165, 105 S.Ct. at 3105 (quoting *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55). Accordingly, official-capacity suits for retrospective relief—i.e., money damages payable from the state treasury—generally impli-

cate the eleventh amendment in the absence of a waiver by the state or a valid congressional override. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Under an exception to the general rule, however, official-capacity actions may not be barred by the eleventh amendment insofar as they request prospective relief—i.e., an injunction or a declaratory judgment and monetary damages that are "ancillary" to either. *Graham,* 473 U.S. at 169 n. 18, 105 S.Ct. at 3107 n. 18; *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

The suit before the district court involved both an action against a state agency as well as personal-capacity and official-capacity actions against Stoner. Only the Board, however, has appealed and only the Board's immunity, therefore, need be addressed. This acknowledgment, in turn, leads us to *Cannon v. University of Health Sciences/Chicago Medical School,* 710 F.2d 351 (7th Cir.1983).

In *Cannon,* this court concluded that the Board was a state agency and, as such, that it was entitled to eleventh amendment immunity. *Id.* at 356–57. Kroll does not contest the validity of our analysis in *Cannon* (and we therefore do not revisit its holding)[2] but he does try to circumvent the case.

█ Kroll first cites *Quern,* a suit against state officials in which the Supreme Court observed that "a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." 440 U.S. at 337, 99 S.Ct. at 1143. The Athletic Association, Kroll contends, raised funds solely from such sources as ticket sales, alumni donations, and sales of memorabilia; it did not accept money from the state treasury. In addition, the Athletic Association may have possessed insurance coverage from outside sources; Kroll believes that the potential proceeds from those policies would also comprise a source of income other than the state treasury. Kroll argues, therefore, that his judgment would not have to be satisfied by "public funds in the state treasury" and that the eleventh amendment therefore does not apply.

The flaw in this argument is that it assumes that the eleventh amendment does not apply unless and until a private party seeks a money judgment payable from state treasury. The Supreme Court, however, faced this same assumption in *Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982), and flatly rejected it. As the Court made clear in *Cory,* the quoted language from *Quern* is relevant only to suits against state officials. *Id.* 475 U.S. at 90–91, 102 S.Ct. at 2328–29. Here, in contrast, we have a suit against a state agency, and that agency must be dismissed from this litigation in the absence of one of the two previously noted exceptions. *Pugh,* 438 U.S. at 782, 98 S.Ct. at 3057. Kroll's argument may be relevant as to Stoner, therefore, but it is not relevant as to a state agency like the Board.[3] *Accord Thompson v. Illinois Dep't of Mental*

---

2. This determination requires a fairly fact-intensive analysis. *See Benning v. Board of Regents,* 928 F.2d 775, 777 (7th Cir.1991) (citing *Soni v. Board of Trustees,* 513 F.2d 347, 352 (6th Cir. 1975) ("Each state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances."), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976)). Courts undertaking this analysis have produced decisions on both sides of the fence, *compare Kovats v. Rutgers,* 822 F.2d 1303 (3d Cir.1987) (denying immunity), *with Schuler v. University of Minn.,* 788 F.2d 510 (8th Cir.1986) (granting immunity), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987), but the bulk of them conclude that a state university is entitled to eleventh amendment immunity. *See Kashani,* 813 F.2d at 845.

3. Of course, the sources of income mentioned by Kroll may be relevant to the argument that the Board's ties to the public fisc are now insufficient to allow the Board to be characterized as a "state agency" for purposes of the eleventh amendment. Kroll has not raised this argument, however, and it is in any event unlikely that the funds received from activities formerly conducted by the Athletic Association would render significantly less substantial the Board's ties to the state treasury.

We would also note that *Cannon* rejected Kroll's argument insofar as it might apply to a state official. 710 F.2d at 357; *cf. In re San Juan Dupont Plaza Hotel Fire Litig.,* 888 F.2d 940, 945 (1st Cir.1989); *Markowitz v. United States,* 650 F.2d 205, 206 (9th Cir.1981) (per curiam).

*Health & Developmental Disabilities,* 753 F.Supp. 219, 221 (N.D.Ill.1990).

■ Kroll also argues that the Board, as successor to the Athletic Association, cannot invoke the eleventh amendment because that defense was unavailable to the Athletic Association.[4] Even assuming, however, that the Athletic Association was not entitled to eleventh amendment immunity, a contention that we need not and do not address, Kroll's argument must still fail. The Board is still the Board, regardless of its status as a successor entity, and in the absence of waiver or congressional abrogation must be accorded the respect due a state under the eleventh amendment. Kroll will be successful, therefore, only if he can establish one of these two exceptions.

■ We take the easier analysis first: this is not a case where Congress has abrogated the states' eleventh amendment immunity. Indeed, Kroll's only federal claim, and therefore the only claim that could possibly satisfy this exception, is his request for relief under 42 U.S.C. § 1983. The Supreme Court, however, long ago dispelled the notion that section 1983 abrogated the states' eleventh amendment immunity,[5] and suits filed under that statute must still pay heed to the eleventh amendment.

■ The only other possibility is waiver. We can give effect to a waiver, however, " 'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.' " *PATH,* 110 S.Ct. at 1873 (quoting *Atascadero,* 473 U.S. at 239–40, 105 S.Ct. at 3146). And here, the only plausible basis for that type of waiver is a provision of the special legislation that allowed the Board to merge with the Athletic Association. In its entirety, that provision states:

> The Board of Trustees of the University of Illinois shall be responsible and liable for all the liabilities and obligations of each of the corporations so merged; and any claim existing or action or proceeding pending by or against either of such corporations may be prosecuted to judgment as if such merger had not taken place, or the surviving corporation may be substituted in its place. Neither the rights of creditors nor any liens upon the property of either of such corporations shall be impaired by such merger.

Ill.Rev.Stat. ch. 144, para. 28d(d)(4).

The district court correctly identified a waiver in that statutory language, but as we view it that waiver is not effective in this eleventh amendment context. In a series of opinions of which *PATH* is the most recent, the Supreme Court has continually emphasized the very stringent nature of the standard used to determine whether a state has waived its eleventh amendment immunity. In *PATH,* for example, New York and New Jersey consented " 'to suits, actions, or proceedings of any form or nature at law, in equity or otherwise.' " 110 S.Ct. at 1873 (quoting N.J.Stat.Ann. § 32:1–157; N.Y.Unconsol.Laws § 7101 (McKinney)). That language was broad, said the Supreme Court, but was nonetheless ambiguous with respect to eleventh amendment immunity because it did not specifically indicate the states' willingness to be sued in federal court. *Id.* In *Atascadero,* a provision of the California Constitution provided that " '[s]uits may be brought against the State in such manner and in such courts as shall be directed by

---

4. As support for this argument, Kroll cites only *Robinson v. KFC Nat'l Mgmt. Co.,* 171 Ill.App.3d 867, 525 N.E.2d 1028, 121 Ill.Dec. 721 (1st Dist.) (successor corporation could not invoke a defense that was unavailable to its predecessor corporation), *appeal denied,* 122 Ill.2d 594, 530 N.E.2d 264, 125 Ill.Dec. 236 (1988). *Robinson,* however, cannot provide a basis for concluding that Illinois has waived its eleventh amendment immunity. As an initial matter, it is far from clear whether an Illinois appellate court may effect a waiver of the state's immunity. *See generally* Ill. Const. art. 13, § 4. But even if an Illinois appellate court could accomplish such a

result, it has not done so here. *Robinson* says absolutely nothing about sovereign immunity, either common law or constitutional, and, therefore, cannot satisfy the requirement that waivers of eleventh amendment immunity are effective only if they use unequivocal language.

5. *See Quern,* 440 U.S. at 341, 99 S.Ct. at 1145 (section 1983 does not "override the traditional sovereign immunity of the States"); *see also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 67, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989).

law.'" 473 U.S. at 241, 105 S.Ct. at 3146 (citing CAL. CONST. art. III, § 5). Again, the Supreme Court held that this language was insufficient because it did not "specify the State's intention to subject itself to suit in *federal court." Id.*

■ Here, Illinois law provides for a limited relaxation of the general rule that tort suits against the Board may be pursued only in the Illinois Court of Claims.[6] The question then becomes, "How far does this waiver extend?" Kroll argues that the legislature had notice of his claim in federal court and that the broad language of the merger statute evidences no objection to his suit. A state's failure to object, however, is not a waiver of eleventh amendment immunity. There exists, moreover, a reasonable alternative construction of the statute that would not involve a waiver of eleventh amendment immunity. *See Atascadero*, 473 U.S. at 241, 105 S.Ct. at 3146. Specifically, the legislature might have intended the merger statute to allow actions only in other Illinois state courts, and a state does not waive its eleventh amendment immunity by consenting to suit only in its own courts. *See, e.g., PATH*, 110 S.Ct. at 1873.

If the statutory language cited from *PATH* and *Atascadero* does not meet the Supreme Court standard, then it is difficult to see how the language in the Illinois statute can satisfy that test. At best, the evidence of waiver is ambiguous; the language might consent to suit in federal court, but then again it might not. And under these circumstances, federal courts are loath to find a waiver; the "vital role of the doctrine of sovereign immunity in the federal system" demands that we err, if at all, on the side of immunity. *See Pennhurst II*, 465 U.S. at 99, 104 S.Ct. at 907. For purposes of the eleventh amendment,

therefore, an ambiguous waiver is no waiver at all.

The Board was entitled to claim immunity under the eleventh amendment and, as such, the district court's order and supplemental order must be and are hereby RE-VERSED AND REMANDED with instructions to dismiss the Board from this suit.[7]

The parties shall bear their own costs.

---

6. ILL.REV.STAT. ch. 37, para. 439.8 (conferring exclusive jurisdiction in Illinois Court of Claims over tort suits against the Board that would lie against a private person or corporation in a civil suit); *id.* ch. 144, para. 22 ("any suit against the Board based upon a claim sounding in tort must be filed in the Court of Claims"). Indeed, this court recently used a similar rationale to affirm the dismissal of tort claims brought against the governing body of Northern Illinois University. *See Benning,* 928 F.2d at 777–78.

7. Our analysis would also support an alternative basis for dismissing this action. This court has jurisdiction only by virtue of 42 U.S.C. § 1983, the remaining state law claims being advanced under the theory of pendent jurisdiction. A state agency with eleventh amendment immunity, however, is not a "person" within the meaning of section 1983. *Will,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45.