962 F.2d 11
 59 Fair Empl.Prac.Cas. (BNA) 1056
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Clyde A. WINTERS, Plaintiff-Appellant,
v.
IOWA STATE UNIVERSITY, Defendant-Appellee.
 No. 91-2717.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 24, 1992.*
Decided May 13, 1992.
Rehearing and Rehearing En Banc
Denied June 1, 1992.
 
 1
 Before RIPPLE and MANION, Circuit Judges and GRANT, Senior District Judge**
 
 ORDER
 
 2
 On June 6, 1990, plaintiff Clyde Winters filed a complaint against Iowa State University, a former employer, alleging violations of 42 U.S.C. §§ 1981 and 1983, Title VII, 42 U.S.C. § 2000e, the Iowa Civil Rights Act, the Illinois Human Rights Act, and the Illinois Constitution. He sought both damages and injunctive relief. The district court dismissed the action with prejudice, and this appeal followed.
 
 A. HISTORY
 
 3
 From 1974 to 1975, Winters was employed by Iowa State University as Director of the Black Cultural Center. When his employment was terminated at the end of the academic year, Winters filed a complaint with the EEOC alleging discriminatory discharge. Winters and the University subsequently entered into an EEOC Settlement Agreement. Under the terms of that agreement, Winters agreed not to institute a Title VII lawsuit against the University in exchange for which the University agreed "to limit employment references on [Winters] to his dates of employment and positions held while employed by [the University]." The agreement did not constitute an admission of any violation of Title VII on the part of the University, and did not reflect any judgment by the Commission on the merits of Winters' charge of discrimination. Dr. Wilbur Layton, Vice President for Student Affairs at the time of Winters' termination, was notified of the terms of the agreement. Dr. Layton was subsequently promoted to Chairman of the Psychology Department, and in September 1978, George Jackson became the assistant Vice President for Student Affairs.
 
 
 4
 In 1986, Winters applied for a position with the Chicago Police Department. When the Department contacted Mr. Jackson requesting verification of Winters' employment with the University, Jackson responded "we have searched our personnel records and have no materials on Mr. Winters."[1] Dr. James Janik, acting on behalf of the Police Department, notified Winters of the University's response in a telephone conversation on December 29, 1986. Winters informed Dr. Janik that he had worked under Dr. Layton while at the University. When Dr. Janik contacted Dr. Layton, Layton verified Winters' employment but also made several negative statements concerning Winters. On January 7, 1987, Dr. Janik recommended to the Director of Personnel of the Chicago Police Department that Winters not be accepted as a candidate for a position with the Department based upon the results of psychological testing and other background information. Winters was notified on January 13, 1987 that his application for employment had been denied.
 
 
 5
 Eighteen months later, on August 15, 1988, Winters filed a charge of discrimination with the EEOC against the University, alleging that it had retaliated against him by breaching the EEOC Settlement Agreement when Jackson failed to verify his employment and Layton gave a negative reference. He subsequently filed a complaint in federal district court alleging violations of 42 U.S.C. §§ 1981, 1983, 2000e, and various state laws. All claims were premised on the alleged breach of the EEOC Settlement Agreement by Jackson and Layton.
 
 
 6
 The University asserted sovereign immunity as a defense to Winters' claims under §§ 1981, 1983 and state law. The district court found the Eleventh Amendment applicable and, on July 13, 1990, ordered those claims stricken from the complaint. The University's motion for summary judgment on the one remaining claim under Title VII was granted on July 1, 1991. A final judgment dismissing the action with prejudice was entered on the same date.
 
 B. DISCUSSION
 
 7
 Under the Eleventh Amendment, the states and their entities are immune from private damage actions or suits for injunctive relief brought in federal court. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). There can be no dispute that Iowa State University is "the state" for purposes of the Eleventh Amendment. See Kaimowitz v. Bd. of Trustees of Univ. of Illinois, 951 F.2d 765, 767 (7th Cir.1991); Kroll v. Bd. of Trustees of Univ. of Illinois, 934 F.2d 904, 907-08 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991). As such, it may assert immunity as a jurisdictional bar to suit in federal court and must be dismissed from the litigation, unless there has been an unequivocal waiver of immunity by the state, or Congress has expressly and unequivocally abrogated the states' immunity. Kroll, 934 F.2d at 907. Neither exception applies in Winters' case.
 
 
 8
 As a state entity, the University is immune from suit under both 42 U.S.C. § 1983, Howlett by and through Howlett v. Rose, 496 U.S. 356, ---, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332 (1990); Will v. Michigan Dept. of State Police, 491 U.S. 58, 64-71 (1989), and § 1981. Rucker v. Higher Educational Aids Board, 669 F.2d 1179, 1184 (7th Cir.1982). See also Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201-02 (9th Cir.1988), cert. denied, 490 U.S. 1081 (1989); Freeman v. Michigan Dept. of State, 808 F.2d 1174, 1178-79 (6th Cir.1987); Sessions v. Rusk State Hospital, 648 F.2d 1066, 1069 (5th Cir.1981). Winters' pendent state claims fare no better. The Eleventh Amendment bars not only federal claims that otherwise would be within the federal court's jurisdiction, but also pendent state-law claims. Pennhurst, 465 U.S. at 120-21.
 
 
 9
 To the extent Winters contends that the University waived its immunity to suit under §§ 1981 and 1983 when it entered into the EEOC Settlement Agreement, his argument is without merit. He cites specifically the fifth paragraph of the Agreement which provides: "[the parties] agree that this agreement may be used as evidence in a subsequent proceeding in which any of the parties allege a breach of this agreement." Such a provision hardly constitutes the unequivocal waiver of immunity necessary to overcome an Eleventh Amendment challenge. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n. 1 (1985) ("A State may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving its immunity to suit in the context of a particular federal program").
 
 
 10
 Winters' challenges to the district court's disposition of his Title VII claim are equally without merit. The district court held that Winters' Title VII claim was barred by the limitations period imposed under 42 U.S.C. § 2000e-5(e) requiring a claimant to file a complaint with the EEOC within 300 days after the alleged unlawful employment practice occurred. The court found that Winters had knowledge of the breach of the Settlement Agreement in December 1986 when Dr. Janik told him that the University had disavowed any knowledge of his prior employment; that he suffered the requisite injury on January 13, 1987 when he was notified by the Police Department that his application for employment had been denied, see Delaware State College v. Ricks, 449 U.S. 250, 256-58 (1980); Webb v. Indiana National Bank, 931 F.2d 434, 435-37 (7th Cir.1991); and, that he did not file a charge with the EEOC until August 15, 1988, more than 300 days after the injury occurred.[2] On appeal, Winters does not dispute the district court's findings with respect to the limitations imposed by § 2000e-5(e), but rather argues the merits of his Title VII claim. His arguments are misplaced. His unexcused failure to comply with a condition precedent to suit bars his action under Title VII and any consideration of the merits of that action.
 
 
 11
 Accordingly, the judgment of the district court is
 
 
 12
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 **
 Hon. Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 It was undisputed that Winters' personnel card was in the University's personnel file at the time of the Chicago Police Department inquiry. Jackson's failure to locate the card was explained in an affidavit to the EEOC dated July 17, 1989, in which he attested that he did not know Winters, was not a party to the Settlement Agreement, and had searched only the personnel records contained in the Office of Minority Student Affairs
 
 
 [2]
 While the limitation period may be subject to equitable modification, Perkins v. Gaynor, 939 F.2d 463, 470 (7th Cir.1991); Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 126 (7th Cir.1989), Winters' only explanation for his failure to act in a timely manner was that he believed Dr. Janik was lying when he said the University had disavowed any knowledge of his prior employment. The court found such an assertion an insufficient basis for modifying the limitations period