**Eugene HORTON, Plaintiff,**

v.

**George MAROVICH, et al., Defendants.**

No. 94 C 6524.

United States District Court,
N.D. Illinois,
Eastern Division.

April 30, 1996.

Eugene Horton, Joliet, Illinois, pro se.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the Illinois Prisoner Review Board's ("IPRB") motion to dismiss plaintiff Eugene Horton's ("Horton") amended complaint against defendant James Irving ("Irving") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court grants the motion to dismiss.

### I. BACKGROUND

Horton brought an action against various defendants, including Irving, based on alleged violations of Horton's civil rights under 42 U.S.C. §§ 1983 and 1985(3).[1] In his complaint, Horton alleges generally that all defendants discriminatorily enforced the law against him because he was black. (Am. Complt. ¶ 1.)

Horton alleges specifically that the IPRB arbitrarily denied him parole for an impermissible reason. (Am.Complt. ¶ 17(b); Am. Complt.Aff. 252.) Horton claims that he "successfully litigated a *pro se* habeas corpus petition to correct the unlawful discipline to deny [sic] parole and now sues for compensatory damages for the unnecessary time spent in prison as a result of arbitrary denial of parole and mental anguish suffered." (Am. Complt. ¶ 17(b). *See also* Am.Complt.Aff. 252; *Horton v. Irving*, 553 F.Supp. 213 (N.D.Ill.1982).) Horton alleges that he was selected for systematic and arbitrary denial of his parole because of his race. (Am. Complt. ¶ 1(c); 5(b)(iii); 6; 18(d).) While Horton makes no allegations directly against Irving, the foregoing allegations are the only ones in Horton's amended complaint that possibly could be construed to be against Irving, the former chairman of the IPRB.

Horton also alleges that each defendant named in his amended complaint "conspired with and aided and abetted" other defendants to violate his rights, privileges and immunities by carrying out their discriminatory practices and acts. (Am.Complt. ¶ 24.)

In an earlier ruling, this court dismissed all defendants but Irving.[2] This court also entered an order of default against Irving for failing to answer or otherwise plead to Horton's complaint.[3] This court now vacates the order of default against Irving, and addresses Horton's claims against him on the merits.

### II. DISCUSSION

#### A. Standard for a motion to dismiss

 When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual

---

1. Horton actually filed and framed his complaint as a class action with several hundred plaintiffs. However, the court did not allow Horton to bring his complaint as a class action, *see* Minute Order dated March 30, 1995, 1995 WL 151812, and the court will consider it only in reference to Horton himself.

2. *See* Memorandum Opinion and Order dated January 19, 1996. 925 F.Supp. 532.

3. *See* Minute Order dated November 28, 1995.

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport,* 699 F.Supp. 1283, 1285 (N.D.Ill. 1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED.R.CIV.P. 12(b)(6); *Gomez v. Illinois State Board of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Furthermore, the court liberally construes allegations in a *pro se* complaint, and applies less stringent standards than those applied to professionally drafted complaints. *Kincaid v. Vail,* 969 F.2d 594, 598 (7th Cir. 1992), *cert. denied, Sceifers v. Vail,* 506 U.S. 1062, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993).

## B. *Capacity in which Irving is sued*

The IPRB bases its motion to dismiss on its invocation of sovereign immunity under the eleventh amendment, which the court will address in due course. However, the eleventh amendment provides immunity only to a state, state agency, or state official sued in his official capacity; it does not immunize an official sued in his individual capacity. *See Kroll v. Board of Trustees of Univ. of Illinois,* 934 F.2d 904, 907 (7th Cir.), *cert. denied,* 502 U.S. 941, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991).

The IPRB contends that Horton sues Irving only in his official capacity, and not in his individual capacity. However, Horton does not explicitly so limit his claim. In fact, in his response to the IPRB's motion to dismiss, Horton alleges that he is suing Irving in both his official and individual capacities. (Pl.'s Resp. to IPRB's Mem. of Law in Support of Mot. to Dism. at 1, 2.) Because the court is bound to draw reasonable inferences in favor of Horton, *see Cromley,* 699 F.Supp. at 1285, the court will analyze Horton's complaint against Irving under both scenarios.

## 1. **Individual capacity**

Individual capacity lawsuits seek to impose personal liability on a government official. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). A "causal connection" or "affirmative link" must exist between the conduct of which the plaintiff complains and the official sued. *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983). Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right. *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105.

Horton's amended complaint is devoid of any allegations that Irving himself deprived or participated in depriving Horton of his constitutional right to due process by arbitrarily denying him parole. Thus, the court finds that Horton has failed to state an individual capacity claim against Irving. More importantly, though, the court finds that Horton cannot state an individual capacity claim against Irving. The limitation period applicable to Horton's claims against Irving in his individual capacity has long since passed.

Section 1983 does not itself contain a specific statute of limitations; therefore, courts look to the law of the state where the injury occurred to determine the statute of limitations applicable to a section 1983 action. *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985); *Cathedral of Joy Baptist Church v. Village of Hazel Crest,* 22 F.3d 713, 716 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 197, 130 L.Ed.2d 129 (1994). In Illinois, the statute of limitations applied to section 1983 actions is the personal injury statute of limitations, with a two-year limitation period. *Joy Baptist Church,* 22 F.3d at 716–17; 735 ILCS 5/13–202. The two-year period begins when the plaintiff knows or should have known that his constitutional rights were violated. *See Joy Baptist Church,* 22 F.3d at 717; *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992).

■ The two-year personal injury statute of limitations that applies to section 1983 actions also applies to section 1985(3) actions. *Bass v. Sampson,* No. 93 C 4442, 1994 WL 323342, *3 (N.D.Ill. June 27, 1994) (citing *Wilson,* 956 F.2d at 741 n. 4 ("The same statute of limitations applies to claims under section 1983 and section 1985(3)"); *Vakharia v. Swedish Covenant Hosp.,* 824 F.Supp. 769, 774 (N.D.Ill.1993) ("In Illinois, the statute of limitations applicable both to section 1981 and section 1985 cases is two years"); *Kness v. Grimm,* 761 F.Supp. 513, 519 (N.D.Ill. 1990) ("section 13–202's two-year limitations period is also applicable to section 1985 claims brought in Illinois")).

Horton obviously discovered his injury caused by Irving's allegedly wrongful denial of parole in 1982, at the latest. It was then that Horton filed a petition for a writ of habeas corpus against Irving based on the parole denial. *See generally Horton v. Irving,* 553 F.Supp. 213 (N.D.Ill.1982). Moreover, Irving left the employ of the IPRB years ago, possibly as early as 1981 or 1982. *See Horton v. Irving,* 553 F.Supp. 213 (N.D.Ill.1982) (describing Irving in caption as "*Past* Chairman of the Illinois Prison Review Board") (emphasis added). Thus, the last time that Irving could have violated Horton's rights personally was, at the latest, in 1982.

In light of the two-year limitations period, then, Horton's cause of action against Irving expired in 1984—ten years before he actually filed his action against Irving.

■ Accordingly, Horton's claims against Irving in his individual capacity are barred by the statute of limitations.

### 2. Official capacity

■ Official capacity lawsuits are, in effect, lawsuits against the government entity for which the official works. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *Graham,* 473 U.S. at 165–66, 105 S.Ct. at 3105. The government entity for which Irving worked was the IPRB. Thus, Horton's complaint against Irving in his official capacity essentially is a lawsuit against the IPRB, which is why the IPRB brings its motion to dismiss.

■ The IPRB contends that the eleventh amendment bars Horton's federal lawsuit against it. The court agrees. However, the court notes that the IPRB ignores the fact that Horton asks for both monetary and injunctive relief, which are not treated the same for the purposes of eleventh amendment immunity. Therefore, the court finds that it must address Horton's claim for damages and request for injunctive relief separately.

### a. *Claim for damages*

■ The eleventh amendment generally immunizes a state from suit in federal court by a private party. *Kroll,* 934 F.2d at 907. Under this principle of sovereign immunity, state agencies and state officials sued in their official capacities are treated the same as states. *Id.* (citing *Alabama v. Pugh,* 438 U.S. 781, 781–82, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978) (per curiam); *Gleason v. Board of Educ. of City of Chicago,* 792 F.2d 76, 79 (7th Cir.1986)).

■ Thus, Irving, in his official capacity, and the IPRB, a state agency, are entitled to eleventh amendment immunity from Horton's claim for damages unless one of two exceptions applies. First, a state may waive its eleventh amendment immunity by "unequivocal language," and thereby consent to suit in federal court. *Kroll,* 934 F.2d at 907 (citing *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). A court will find such waiver "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Atascadero,* 473 U.S. at 239–40, 105 S.Ct. at 3146.

The state of Illinois has not consented, either expressly or impliedly, to being sued in federal court in the statute creating its Prisoner Review Board. *See* 730 ILCS 5/3–3–1—5/3–3–13. Therefore, Illinois has not waived the IPRB's eleventh amendment immunity.

■ Second, also by "unequivocal language," Congress may "use its enforcement

powers under the fourteenth amendment to abrogate the states' eleventh amendment immunity." *Kroll,* 934 F.2d at 907 (citing *Atascadero,* 473 U.S. at 246, 105 S.Ct. at 3149 ("When Congress chooses to subject the States to federal jurisdiction, it must do so specifically") (other citations omitted)).

Section 1983 and 1985 actions do not fall under this exception; by enacting these statutes, Congress did not abrogate the states' eleventh amendment immunity. *See Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979) (section 1983 does not "override the traditional sovereign immunity of the States"); *Rucker v. Higher Educational Aids Board,* 669 F.2d 1179, 1184 (7th Cir.1982) (holding that a state agency was immune from federal damages liability under section 1985, and thus implicitly finding that Congress did not abrogate states' eleventh amendment immunity by enacting section 1985).

Since neither of the foregoing exceptions applies to Horton's claims against Irving in his official capacity—that is, against the IPRB—the doctrine of sovereign immunity bars Horton's damages claims.

### b. *Claim for injunctive relief*

Official capacity actions that seek injunctive relief for alleged constitutional violations are not barred by the eleventh amendment. *Kroll,* 934 F.2d at 908; *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100–03, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984). Nonetheless, the court denies Horton's claim for injunctive relief on another ground—that it is moot.

To be entitled to injunctive relief, a plaintiff must establish that he "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). "Federal courts do not, as a rule, enjoin conduct which has been discontinued with no real prospect that it will be repeated." *Ragsdale v. Turnock,* 841 F.2d 1358, 1366 (7th Cir.1988).

In the present case, Horton makes only one allegation against Irving, in either his individual or official capacity. That allegation makes clear that Irving's and the IPRB's allegedly unconstitutional conduct towards Horton occurred, and ended, at the latest in 1982. Horton does not allege that Irving's and the IPRB's illegal conduct towards Horton is still occurring. Nor does Horton allege that Irving, or the IPRB, is likely again to deny parole to Horton for impermissible reasons. *See Houston v. Sheahan,* 62 F.3d 902, 903 (7th Cir.1995) (request for injunctive relief by former jail inmate complaining of jail conditions was moot, where former inmate did not allege that he was likely to return to jail). Even if Horton had alleged that Irving's, or the IPRB's, allegedly unconstitutional acts were capable of repetition, which he did not, his request for injunctive relief still would fail. *See Ragsdale,* 841 F.2d at 1365 (citations omitted) (plaintiff's conclusory assertions that the challenged actions were capable of repetition were not sufficient to avoid mootness).

Accordingly, because nothing remains for the court to enjoin, the court finds that Horton has no claim for injunctive relief under 42 U.S.C. §§ 1983 and 1985(3).

### C. *Default against Irving*

Because the court finds that Horton has no cause of action remaining against Irving, the court vacates its November 28, 1995, order of default against Irving. For the same reason, the court also strikes as moot Horton's application for entry of default judgment against Irving.

### III. *CONCLUSION*

For the foregoing reasons, the court concludes that Horton has no claim for monetary or injunctive relief against Irving in either his individual or official capacity. Accordingly, the court grants the IPRB's motion to dismiss Horton's amended complaint against Irving; dismisses with prejudice Horton's amended complaint against Irving; vacates the November 28, 1995, order of default against Irving; and strikes as moot Horton's

application for entry of default judgment against Irving.