824 F.Supp. 160 (1993)
Craig THOMAS, Plaintiff,
v.
Danny BROWN, et al., Defendants.
No. 3:91 cv 193AS.
United States District Court, N.D. Indiana, South Bend Division.
May 19, 1993.
*161 Craig Thomas, pro se.
James R. Green, Indianapolis, IN, for defendants.

MEMORANDUM AND ORDER
ALLEN SHARP, Chief Judge.

I. Introduction
On April 23, 1991, plaintiff pro se, Craig Thomas, an inmate at the Indiana State Prison, filed a complaint purporting to state a claim under 42 U.S.C. § 1983, and invoking this court's jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4). The motion for summary judgment filed by the defendants on October 30, 1992, demonstrates the necessary compliance with the mandates of Lewis v. Faulkner, 689 F.2d 100 (7th Cir.1982). This court also conducted a telephonic pretrial conference on July 16, 1992.
In the complaint, the plaintiff alleges that certain of the abovementioned defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Apparently, after being informed that the water in the sink in his cell did not function at all, the defendants did not have the sink repaired for a considerable period of time. Next, the plaintiff alleges that his Fourteenth Amendment rights were violated when he initiated the grievance process based on the water problem in his cell. Finally, the plaintiff alleges a violation his rights established under Article 1, § 15 of the Indiana Constitution, and that the defendants violated state laws I.C. XX-XX-X-X(a) and I.C. XX-XX-X-X(4).

II. Summary Judgment
Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Russo v. Health, Welfare & Pension Fund, Local 705, 984 F.2d 762 (7th Cir.1993).
A thorough discussion of Rule 56 by the Supreme Court of the United States can be found in a trilogy of cases decided in 1986. See, Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)[1]; and Anderson v. Liberty *162 Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Celotex addressed the initial burdens of the parties under Rule 56, and Anderson addressed the standards under which the record is to be analyzed within the structure of Rule 56.
The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A material question of fact is a question which will be outcome determinative of an issue in the case. Wainwright Bank v. Railroadmens Federal Sav., 806 F.2d 146 (7th Cir.1986). The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.
Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate `specific facts showing that there is a genuine [material] issue for trial.'" Id. The nonmoving party cannot rest on its pleadings, Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir.1991), or upon conclusory allegations in affidavits. Cusson-Cobb v. O'Lessker, 953 F.2d 1079, 1081 (7th Cir.1992). "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir.1990).
During its analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Brennan v. Daley, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. Anderson, 477 U.S. at 252-255, 106 S.Ct. at 2512-14.
For academic insight into Celotex and Anderson, see Childress, A New Era for Summary Judgments: Recent Shifts at the Supreme Court, 116 F.R.D. 183, 194 (1987), where the author states:
The recent Supreme Court cases likely require that summary judgment be more readily granted.... This emerging trend signals a new era for summary judgment, one in which the old presumptions are giving way to a policy of balancing and efficiency, and the mechanism is more appropriate to double as a sufficiency motion allowing some sort of trial itself on the paper record.
More recently Childress has written that Celotex and Anderson clarify that Rule 56 motions
should not be hesitantly granted when appropriate.... Any litigant dealing with summary judgment must be aware of this new trend, the Court's cases, their application in each circuit, and the direction they portend. Pretrial practice is a new ball-game.
Childress, A Standards of Review Primer: Federal Civil Appeals, 125 F.R.D. 319, 343 (1989).
Recent object lessons applying these ideas are found in McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 370-371 (7th Cir.1992); Karazanos v. Navistar Intern. Transp. Corp., 948 F.2d 332, 335 (7th Cir. 1991); and Old Republic Ins. Co. v. Federal Crop Ins. Corp., 947 F.2d 269, 273-274 (7th Cir.1991).

III. The Eleventh Amendment
The plaintiff has included several state defendants in his complaint and those defendants in their official capacities are entitled to immunity for claims for money damages under the Eleventh Amendment to the Constitution of the United States. The Eleventh Amendment states as follows:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
In Scott v. O'Grady, 975 F.2d 366 (7th Cir.1992), the Seventh Circuit, speaking *163 through Judge Manion, cogently explained the ramifications of the Eleventh Amendment:
Although ... [the abovementioned] language [of the Eleventh Amendment] expressly encompasses only suits brought against a state by citizens of another state, the Eleventh Amendment has long been interpreted to also bar federal courts from exercising jurisdiction over actions against a state brought by her own citizens. Papasan v. Allian, 478 U.S. 265, 276 [106 S.Ct. 2932, 2939, 92 L.Ed.2d 209] (1986) (citing Hans v. Louisiana, 134 U.S. 1 [10 S.Ct. 504, 33 L.Ed. 842] (1890)). Eleventh Amendment issues arise whenever a private citizen files a federal lawsuit against a state, a state agency, or a state official  although the effect of the amendment differs depending on the category of defendant. Kroll v. Board of Trustees of the University of Illinois, 934 F.2d 904, 907 (7th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 377 [116 L.Ed.2d 329] (1991).
All suits against a state or its agencies are barred by the Eleventh Amendment unless the state consents to suit in federal court or Congress uses its powers under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 [105 S.Ct. 3142, 3145, 87 L.Ed.2d 171] (1985); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 [104 S.Ct. 900, 907, 79 L.Ed.2d 67] (1984); Kroll, 934 F.2d at 907. Suits against state officials, however, are sometimes permissible. A suit against a state official in his personal capacity is not barred by the Eleventh Amendment  although the state official may be able to assert personal immunity defenses (i.e., qualified immunity) and a damage award may be executed only against the official's personal assets. Kentucky v. Graham, 473 U.S. 159, 165-67 [105 S.Ct. 3099, 3104-06, 87 L.Ed.2d 114] (1985); Kroll, 934 F.2d at 907. An official can also be sued in his official capacity. But an official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver by the state or a congressional override. Graham, 473 U.S. at 169 [105 S.Ct. at 3107]; Kroll, 934 F.2d at 907-08. An exception to this rule is an official-capacity suit for prospective injunctive relief: a suit "to enjoin as unconstitutional a state official's action is not barred by the Amendment." Papasan, 478 U.S. at 276-78 [106 S.Ct. at 2939-2940] (citing Ex Parte Young, 209 U.S. 123, 159-60 [28 S.Ct. 441, 453-54, 52 L.Ed. 714] (1908)); see also Kroll, 934 F.2d at 908.
Id. at 369. See also Kashani v. Purdue University, 813 F.2d 843 (7th Cir.), cert. denied, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); Owen v. Lash, 682 F.2d 648 (7th Cir.1982); Sheets v. Indiana Department of Corrections, 656 F.Supp. 733 (S.D.Ind.1986). For recent authority consistent with Kashani, 813 F.2d at 843, see Shelton v. Trustees of Indiana University, 891 F.2d 165 (7th Cir.1989). See also Kroll v. Board of Trustees of the University of Illinois, 934 F.2d 904 (7th Cir.1991); Cosby v. Jackson, 741 F.Supp. 740 (N.D.Ill.1990), and Rodenbeck v. Indiana, Leaking Underground Storage Tank Div. etc., 742 F.Supp. 1442 (N.D.Ind.1990). Any and all damage claims against the defendants in their official capacities are now DISMISSED under the mandates of the Eleventh Amendment of the Constitution.

IV. Eighth Amendment and Conditions-of-Confinement
The plaintiff's allegations under the Eighth Amendment are troublesome to this court. The plaintiff asserts an Eighth Amendment claim against the defendants Spohn, Brown, Fortney, Aubon and Coto. Specifically, the plaintiff alleges that on December 13, 1990, he was transferred to a new segregation unit located at I-Cellhouse Detention Unit and was placed in Cell 26 on Range 2. On December 15, 1990, the plaintiff maintains that he discovered his cell had no running water in the sink. Upon discovering this situation, the plaintiff contends that he notified certain of the abovementioned defendants, and that those defendants indicated that the sink would be repaired. During the ensuing 33 days, according to the plaintiff, no repairs were initiated or completed on the sink. The *164 plaintiff maintains that he had to drink water from the toilet in his cell. On January 15, 1991, the plaintiff alleges that he submitted a three page grievance on this situation, and he further contends that Spohn would not accept the grievance. Apparently, Spohn refused to accept the grievance because it was not filed within forty-eight hours of the discovery of the water problem.
The Eighth Amendment protection from cruel and unusual living conditions has both an objective and subjective component. Deprivations must be objectively serious along a spectrum measured by contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Essentially, the Eighth Amendment "draws its meaning from the evolving standards of decency that mark the progress of a maturing society." Id. at 346, 101 S.Ct. at 2399 (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion)). Specifically, for purposes of the objective component, the Court in Hudson v. McMillian, ___ U.S. ___, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), explained that "extreme deprivations are required to make out a conditions-of-confinement claim." Id. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (citations omitted) (internal quotations omitted). To establish the subjective component, the officials must act with a sufficiently culpable state of mind, which is deliberate indifference. Wilson v. Seiter, ___ U.S. ___, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).
In Wilson, supra, the Court discussed the abovementioned objective and subjective components in great detail. Specifically, the Wilson Court addressed the issue of "whether a prisoner claiming that conditions-of-confinement constitute cruel and unusual punishment must show a culpable state of mind on the part of the prison officials[.]" Id. at ___, 111 S.Ct. at 2323. The prisoner alleged that a number of the conditions-of-confinement constituted cruel and unusual punishment in violation of the Eighth Amendment. "The complaint alleged overcrowding, excessive noise, insufficient locker storage space, inadequate heating and cooling, improper ventilation, unclean and inadequate restrooms, unsanitary dining facilities and food preparation, and housing with mentally and physically ill inmates." Id.
First, the Wilson Court explained that the conditions are to be objectively evaluated in order to ascertain whether the complained of conditions are considered part of the penalty formally imposed for the crime, i.e. penalogical justification.[2] Second, the Court explained that the inmate must show deliberate indifference. With regard to deliberate indifference, the Wilson Court, speaking through Justice Scalia, discussed the deliberate indifference standard of the Eighth Amendment. An extensive quotation therefrom is in order:
These cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment. See also Graham v. *165 Connor, 490 U.S. 386, 398, 109 S.Ct. 1865, 1873, 104 L.Ed.2d 443 (1989). Petitioner concedes that this is so with respect to some claims of cruel and unusual prison conditions. He acknowledges, for instance, that if a prison boiler malfunctions accidentally during a cold winter, an inmate would have no basis for an Eighth Amendment claim, even if he suffers objectively significant harm. Reply Brief for Petitioner 12-14. Petitioner and the United States as amicus curiae in support of petitioner, suggests that we should draw a distinction between "short-term" or "one-time" conditions (in which a state of mind requirement would apply) and "continuing" or "systemic" conditions (where official state of mind would be irrelevant). We perceive neither a logical nor a practical basis for that distinction. The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify. As Judge Posner has observed:
`The infliction of punishment is a deliberate act intended to chastise or deter. This is what the word means today; it is what it meant in the eighteenth century.... [I]f [a] guard accidentally stepped on [a] prisoner's toe and broke it, this would not be punishment in anything remotely like the accepted meaning of the word, whether we consult the usage of 1791, or 1868, or 1985."
Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). See also Johnson v. Glick, 481 F.2d 1028, 1032 (2nd Cir.1973) (Friendly, J.), ("The thread common to all [Eighth Amendment prison cases] is that `punishment' has been deliberately administered for a penal or disciplinary purpose"), cert. denied sub. nom John v. Johnson, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Cf. Block v. Rutherford, 468 U.S. 576, 584 [104 S.Ct. 3227, 3231, 82 L.Ed.2d 438] (1984); Bell v. Wolfish, 441 U.S. 520, 537-539 [99 S.Ct. 1861, 1873-1874, 60 L.Ed.2d 447] (1979). The long duration of a cruel prison condition may make it easier to establish knowledge and hence some form of intent, cf. Canton v. Harris, 489 U.S. 378, 390, n. 10 [109 S.Ct. 1197, 1205 n. 10, 103 L.Ed.2d 412 (1989); but there is no logical reason why it should cause the requirement of intent to evaporate. The proposed short-term/long-term distinction also defies rational implementation. Apart from the difficulty of determining the day or hour that divides the two categories [is it the same for all conditions?] the violations alleged in specific cases often consist of composite conditions that do not lend themselves to such pigeonholing. Cf. McCarthy v. Bronson, 500 U.S. ___, ___ [111 S.Ct. 1737, ___, 114 L.Ed.2d 194] (1991) (slip op., at 6).
Wilson v. Seiter, ___ U.S. at ___-___, ___, 111 S.Ct. at 2324-25, 2327.
The Seventh Circuit recently observed that "[i]n order to show `deliberate indifference,' a plaintiff is required to prove that the prison official's action was deliberate or reckless in the criminal sense." Santiago v. Lane, 894 F.2d 218 (7th Cir.1990) (emphasis added) (footnote omitted). The United States Supreme Court has cited the Seventh Circuit's criminal recklessness standard with approval. Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986), citing Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). In Franzen, the Seventh Circuit noted that punishment under the Eighth Amendment "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." 780 F.2d at 653. See also Wilks v. Young, 897 F.2d 896 (7th Cir.1990). Compare the insightful analysis of Judge Anderson in Gomm v. DeLand, 729 F.Supp. 767 (D.Utah 1990).
The basic standard of deliberate indifference is found in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). See also Pacelli v. DeVito, 972 F.2d 871 (7th Cir.1992), Swofford v. Mandrell, 969 F.2d 547 *166 (7th Cir.1992), Duane v. Lane, 959 F.2d 673 (7th Cir.1992), Jackson v. Duckworth, 955 F.2d 21 (7th Cir.1992), McGill v. Duckworth, 944 F.2d 344 (7th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992), Wallace v. Robinson, 940 F.2d 243 (7th Cir.1991), Salazar v. Chicago, 940 F.2d 233 (7th Cir.1991), Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.1991), Goka v. Bobbitt, 862 F.2d 646, 650 (7th Cir.1988), Richardson v. Penfold, 839 F.2d 392, 394-95 (7th Cir.1988); and Felders v. Miller, 776 F.Supp. 424 (N.D.Ind.1991). See also Musgrove v. Broglin, 651 F.Supp. 769 (N.D.Ind.1986); and Burris v. Kirkpatrick, 649 F.Supp. 740 (N.D.Ind.1986).
Again, for purposes of summary judgment, this court reiterates that the Eighth Amendment protection from cruel and unusual living conditions has both an objective and subjective component. This court also takes note of the discussions with this plaintiff during a telephonic pretrial conference which was conducted on July 16, 1992. The plaintiff maintains that he did not have access to running water and notified the requisite prison officials; however, the prison officials did not attempt to correct this problem for a considerable time.
In direct contrast, the defendants in their summary judgment brief, submitted the affidavits of Defendants Danny Brown, Robert Aubin, Victor Cotto, McArthur Fortney, and Mark Spohn. The affidavit of Danny Brown asserts that this plaintiff never complained about the water not working in his cell, and the defendant Robert Aubon says that he has no memory of such complaints. Neither does the defendant Victor Coto. All deny any intent to deprive this plaintiff of water. However, there is an affidavit of MacArthur Fortney in which he says that this plaintiff attempted to file a grievance regarding a water problem on or about January 15, 1991. An investigation was triggered by case manager Spohn, and this plaintiff was moved to a new cell where the water to the sink was working properly. This appears to be confirmed by the affidavit of Mark J. Spohn.
For purposes of summary judgment, the abovementioned discussion certainly presents issues of material fact on both the objective and subjective components. Again to reiterate, the Court in Hudson v. McMillian, ___ U.S. ___, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), explained that "extreme deprivations are required to make out a conditions-of-confinement claim." Id. Here, this court finds a dispute over a material fact for purposes of the basic premise of the complaint  whether the cell had access to running water. Additionally, this court must ascertain the dates when the plaintiff first discovered the water problem.
More importantly, as this court had explained in great detail, to establish the subjective component, the officials must act with a sufficiently culpable state of mind, which is deliberate indifference. Wilson v. Seiter, ___ U.S. ___, 111 S.Ct. 2321, 115 L.Ed.2d 271 Intent is a very difficult decision to make at the summary judgment level, and although this court has done so in the past, here, there are too many facts yet undetermined to the satisfaction of this court. The question is whether under the current evolutionary analysis of deliberate indifference, this plaintiff has stated enough to have a trier of fact determine the issue of deliberate indifference under appropriate instructions.
When all of the sworn testimony is examined together, this court finds that there are genuine issues of fact as to deliberate indifference. Initially, the court notes that there is a genuine issue of fact as to whether the plaintiff informed certain defendants of the water situation, and if the plaintiff did inform the defendants, it becomes important to ascertain when and how the plaintiff informed the abovementioned defendants. This court notes that when the appropriate officials were advised of the water situation in the plaintiff's cell, he was moved to another cell where the water situation was appropriate. This certainly militates against the plaintiff's claim, however, the notion of deliberate indifference is heavily weighted with questions of intent, which are difficult to decide on this level. This court must make it clear that it has serious reservations about this case, however, in the interest of caution, this court will not decide this issue here at the summary judgment level.

V. Remaining Issues
To the extent that this plaintiff is attempting to use the federal question jurisdiction of *167 this court to assert purely and solely claims for violation of state law, such is foreclosed by the Eleventh Amendment as set forth in Pennhurst v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Also, to the extent that any claims here are based solely on negligence, the same are foreclosed under Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), and Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).
To the extent that this case is used as a vehicle to require, under the Due Process Clause of the Fourteenth Amendment, the State of Indiana to have a grievance system, that particular species of constitutional right has not yet been announced. It is correct that due process rights can certainly arise from state laws and regulations. Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), and Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). It has been held in at least one circuit that state created inmate grievance procedures are not protected by the Fourteenth Amendment, and that allegations of violations of those grievance procedures do not state a claim under § 1983. See Mann v. Adams, 855 F.2d 639 (9th Cir.), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988). See also Spencer v. Moore, 638 F.Supp. 315 (E.D.Mo.1986).
Finally, the plaintiff asserts an equal protection claim based on the same facts as the abovementioned Eighth Amendment claim. This court notes that "[t]he Equal Protection Clause provides a cause of action to any citizen of the United States." Miles v. Konvalenka, 791 F.Supp. 212 (N.D.Ill.1992) (quoting Collins v. City of Harker Heights, ___ U.S. ___, ___, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992)). More germane to this case, in Williams v. Lane, 851 F.2d 867 (7th Cir.), cert. denied, 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989), the Seventh Circuit explained that "[p]risoners do not surrender their rights to equal protection at the prison gate." Id. at 881. When evaluating an equal protection claim, the court must first determine whether the claim involves a suspect class or a fundamental right. Plyler v. Doe, 457 U.S. 202, 216-27, 102 S.Ct. 2382, 2394-2400, 72 L.Ed.2d 786 (1982). Here, it is important to note that prisoners are not a suspect class. Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir.1990). In reviewing this claim, the court has not been apprised of the requisite facts in order to invoke a heightened equal protection scrutiny. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (heightened scrutiny for race, alienage, national origin, gender, and legitimacy). For example, absent a compelling state interest, racial discrimination in administering a prison violates the equal protection clause of the Fourteenth Amendment. Black v. Lane, 824 F.2d 561, 562 (7th Cir.1987) (black inmate stated cause of action by alleging racial discrimination in the assignment of prison jobs); Harris v. Greer, 750 F.2d 617 (7th Cir.1984) ("allegation of deliberate racial discrimination in prisoner's job assignments sufficient to state equal protection"). Therefore, this court finds no cognizable equal protection claim in the abovementioned facts.
After a careful review of the record in this case, this court DENIES summary judgment to all of the defendants on the Eighth Amendment claim and GRANTS summary judgment to all of the defendants on the remainder of the claims.
IT IS SO ORDERED.
NOTES
[1] For the judicial epilogue of Celotex, see Catrett v. Johns-Manville Sales Corp., 826 F.2d 33 (D.C.Cir.1987), cert. denied, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).
[2] This court also notes that Wilson made it clear that condition-of-confinement cases based on totality of circumstances are not per se viable, rather each component encompassing the totality must be independently evaluated. Specifically, the Wilson Court indicated:

Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise  for example, a low cell temperature at night combined with a failure to issue blankets. Compare Spain v. Procunier, 600 F.2d 189, 199 (7th Cir.1979) (outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day) with Clay v. Miller, 626 F.2d 345, 347 (4th Cir.1980) (outdoor exercise not required when prisoners otherwise had access to day room 18 hours per day). To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists....
Wilson v. Seiter, ___ U.S. at ___-___, ___, 111 S.Ct. at 2324-25, 2327.