Eugene **HORTON**, Plaintiff,

v.

George **MAROVICH**, et al., Defendants.

No. 94 C 6524.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 19, 1996.

See also 1995 WL 151812.

Eugene Horton, Joliet, IL, Pro se.

Diann Karen Marsalek, Illinois Attorney General's Office, Chicago, IL, for George Marovich.

Diann Karen Marsalek, Illinois Attorney General's Office, Chicago, IL, for Saul A. Epton, Barbara Kamm.

Terry L. McDonald, David S. Meyerson, Julie Lynn Mulderink, Cook County State's Attorney, Chicago, IL, for Aurelia Pucinski, Kathleen Pantle.

Diane J. Larsen, City of Chicago, Law Department Corporation Counsel, Chicago, IL, Richard Aztlan.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are four motions to dismiss plaintiff Eugene Horton's ("Horton") complaint. One is brought by defendants George Marovich ("Marovich"), Saul Epton ("Epton"), and Barbara Kamm ("Kamm"); another by defendant Aurelia Pucinski ("Pucinski"); the third, by defendant Kathleen Pantle ("Pantle"); and the fourth, by defendant Richard Aztlan ("Aztlan"). For the reasons that follow, the court grants the motions to dismiss.

### I. BACKGROUND

Horton brought an action against various defendants, including moving defendants, based on alleged violations of Horton's civil rights under 42 U.S.C. §§ 1983 and 1985(3).[1] In his complaint, Horton alleges generally that all defendants discriminatorily enforced the law against him because he was black. (Am.Complt. ¶ 1.)

Horton alleges specifically that, in 1971, Epton sentenced him to 100–150 years in prison for the murder of a white victim, and that Epton, the prosecutor, and the defense counsel, all of whom were white, have not prosecuted, defended, convicted, or sentenced a white defendant accused of committing a similar or greater offense against a black victim. Horton also alleges that Epton and the prosecutor withheld evidence regarding Horton's military record. (Am.Complt. ¶ 10(a).)

Horton alleges that on or about February 25, 1984, Marovich gave Horton a mandatory sentence after Horton was found guilty of committing armed robbery, with a prior offense of accessory to murder. Horton contends that this sentence was different from that given to similarly situated white Americans, and that Marovich so sentenced Horton because he was black. (Am.Complt. ¶ 9(a).)

Horton makes no specific allegations against Kamm or Pantle. However, Kamm, as Horton's counsel on appeal, and Pantle, as Horton's post-conviction counsel, presumably are embraced by Horton's general allegation that defendants, specifically defense counsel, have failed to provide complete legal services to Horton because of his race. (Am.Complt. ¶¶ 1(h), 5(b)(viii), 6, 8, 10(a), 16, 18(h)).

---

1. Horton actually filed and framed his complaint as a class action with several hundred plaintiffs. However, the court did not allow Horton to bring his complaint as a class action, *see* Minute Order dated 3/30/95, and the court now will consider it only in reference to Horton himself.

Horton also alleges that defendants, specifically the clerks of the courts, have not sent copies of legal documents to Horton because of his race. (Am.Complt. ¶¶ 1(f), 5(b)(vi), 6, 8, 14, 18(f)). This is the only allegation that possibly could be directed at Pucinski, who is the Clerk of the Circuit Court of Cook County.

Horton alleges that Aztlan harassed and disadvantaged prisoners by carrying out a federal criminal mail fraud scheme during a conspiracy to impersonate and harm attorney Wendy Morgan. (Am.Complt. ¶¶ 1(e), 13.)

Horton alleges generally that the discriminatory practices and acts of all defendants have continued for many years. (Am. Complt. ¶ 8, 22.) Horton also alleges that each defendant "conspired with and aided and abetted" other defendants to violate his rights, privileges and immunities by carrying out their discriminatory practices and acts. (Am.Complt. ¶ 24.)

## II. DISCUSSION

### A. Standard of review

■■■ When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport,* 699 F.Supp. 1283, 1285 (N.D.Ill. 1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the complaint. *See* Fed.R.Civ.P. 12(b)(6); *Gomez v. Illinois State Board of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. Failure to serve certain defendants

As a preliminary matter, the court notes that Horton still has not executed service of his summons and complaint upon defendants William Heenan and Mel Allen, who are not among the moving defendants. The court reopened Horton's case on July 17, 1995. Therefore, Horton had 120 days, until November 14, 1995, to serve all defendants named in his complaint. *See* Fed.R.Civ.P. 4(m). Because Horton failed to effect service upon William Heenan and Mel Allen within the designated time limit, upon its own motion and pursuant to Federal Rule of Civil Procedure 4(m), the court dismisses without prejudice Horton's complaint as to William Heenan and Mel Allen. *See id.* William Heenan and Mel Allen are dismissed as party defendants.

### C. Claims against Aztlan

■■■ In his complaint, Horton alleges that Aztlan harassed and disadvantaged prisoners through a mail fraud scheme in which Aztlan impersonated attorney Wendy Morgan by mailing letters to prisoners on her stationery. (Am.Complt. ¶¶ 1(e) and 13.) In his response to Aztlan's motion to dismiss, Horton elaborates on his claim:

In an attempt to harm Attorney Wendy R. Morgan and at least 27 state prisoners who are all black at Stateville Correctional Center in Joliet, Illinois 60434, Sgt. Aztlan impersonated Attorney Wendy R. Morgan by composing, writing and signing a letter on the stationary [sic] of Wendy R. Morgan, attorney, promising free legal assistance to every prisoner subjected to discrimination by the I.D.O.C. providing that they first have a family member or friend in attendance at a meeting held at 400 Cresthill Dr., in Prospect Heights, Illinois, on or about December 31, 1994, at 10:00 A.M. When the family members (women, children, grandparents and parents, etc..[sic]) of these black prisoners attempted to attend the meeting in question, they were assaulted with racial hatred words and some had bricks, rocks, bottles, etc ..., thrown at them. Fortunately, a small group of white males that were not preju·dice [sic] intervened and stopped the other prejudice [sic] white attackers from further harming the women and children and grandparents of the black prisoners.

(Resp. at 3.)

Horton became involved in this occurrence when some of the prisoners who had received

a copy of the letter requested Horton's assistance in contacting their relatives and friends to tell them about the meeting and ask that they attend. (*Id.* at 4.) Horton allegedly spent $819.67 on phone calls to his fellow inmates' friends and family; he alleges that he would not have spent this amount but for his expectation of receiving legal assistance from Wendy Morgan's law firm. (*Id.*)

Horton's call-making is the extent of his involvement in the alleged conspiracy to harm Wendy Morgan and the prisoners' families and friends. He was not one of the prisoners who received the allegedly fraudulent letter. While Horton may have spent money on phone calls, this was his choice. Furthermore, the letter purportedly written by Aztlan says nothing about reimbursement for phone calls by Wendy Morgan's law firm. (*See* Resp. Ex. JA, JB, JC.) Thus, Horton's assumption that he would be reimbursed for his calls by Wendy Morgan's law firm is not Aztlan's doing but Horton's own.

■ The court acknowledges that in deciding a motion to dismiss for failure to state a claim, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley,* 699 F.Supp. at 1285. However, the court notes that a plaintiff "is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved . . . would entitle him to judgment." *Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992) (citing *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 915 (7th Cir.1985)).

The facts that Horton alleges in his response to Aztlan's motion are consistent with his complaint, and expand upon the vague allegations in his complaint. Horton obviously intended this clarification to show that he has a claim against Aztlan, though it served just the opposite purpose. The court finds that to take into account Horton's response only if it helped Horton's case, but to ignore it if it hurt, would be logically inconsistent; in both instances, the court simply is accepting Horton's version of the circumstances out

of which his claim arises. By accepting Horton's view of the facts, the court is complying with the mandates of *Gomez,* 811 F.2d at 1039 (complaint should be viewed in light most favorable to plaintiff), and *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102 (court may dismiss complaint only if plaintiff clearly can prove no set of facts in support of his claims that would entitle him to relief). *See also* section II.A., above.

In short, in his response to Aztlan's motion to dismiss, Horton affirmatively has shown that he has no claim against Aztlan. Accordingly, the court dismisses Horton's claims against Aztlan with prejudice.

### D. *Claims against Marovich, Kamm, Pantle, Pucinski, and Epton*

#### 1. **Damages claims against Marovich, Kamm, Pantle, and Pucinski—the *Heck* rule**

■ In *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that for a section 1983 plaintiff to be able to "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [the] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at ——, 114 S.Ct. at 2372. A claim for damages that calls into question the validity of a "conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* Therefore, this court must consider whether a judgment in favor of Horton in his lawsuit "would necessarily imply the invalidity of his conviction or sentence." *Id.*

■ In a case similar to the one before this court, a prisoner claimed that his postconviction counsel " 'carelessly and negligently failed to provide equal treatment and professional services to [the prisoner] because he is Black and they are White, and discrimination is a policy of the defendants.' " *Webb*

*v. Moorman*, No. 94 C 1253, 1994 WL 478508, at *1, 1994 U.S.Dist. LEXIS 12150, at *2 (N.D.Ill. Aug. 26, 1994) (quoting Complt. ¶ 3). The prisoner also claimed that the Clerk of the Circuit Court of Cook County conspired with his post-conviction counsel to deprive the prisoner of his civil rights by providing the post-conviction counsel with " 'a false and fraudulent document entitled post-conviction petition with a Cook County Circuit Court filed stamp.' " *Webb*, 1994 WL 478508, at *1, 1994 U.S.Dist. LEXIS 12150, at *2–3 (quoting Complt. ¶ 4(b)). The prisoner claimed that as a result of these allegedly wrongful acts he was illegally imprisoned, and sought compensatory and punitive damages to remedy his illegal incarceration. *Webb*, 1994 WL 478508, at *2, 1994 U.S.Dist. LEXIS 12150, at *3.

The court found that the prisoner's complaint essentially charged that the post-conviction counsel and clerk of the court conspired to prevent his post-conviction relief because of racial animus, and consequently that the counsel and clerk violated the prisoner's civil rights by depriving him of his liberty. *Id.* at *3, at *5. The court thus found that although the prisoner raised his claim pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986, he ultimately was attacking the legality of his confinement. *Id.*

The court stated that under *Heck*, unlawful confinement does not constitute an injury until the confinement has been invalidated. *Id.* at *3, at *9 (citing *Heck*, —— U.S. at ——, 114 S.Ct. at 2372). The court concluded that because the prisoner's confinement had not been invalidated in a manner prescribed by *Heck*, the prisoner had no cause of action under section 1983. *Id.* The court then went further and held that even though *Heck* concerned only a section 1983 claim, there was no reason to apply a different rule to the prisoner's sections 1985(3) and 1986 claims. *Id.* at *3, at *10. The court found that although sections 1985 and 1986 provided the prisoner with slightly different theories of relief than section 1983, they still were civil tort actions for damages arising out of the prisoner's allegedly unlawful confinement. Therefore, the court concluded that the prisoner had attacked the lawfulness of his con-

finement under sections 1985 and 1986 as well, and had no cause of action under those sections until his conviction or confinement was invalidated. *Id.* at *3, at *11. *See also Reed v. City of Meridian Police Department*, 879 F.Supp. 47, 49 (S.D.Miss.1995); *Davis v. Kuyper*, No. C 94–20238 RPA, 1994 U.S.Dist. LEXIS 12533, *3 (N.D.Calif. July 28, 1994) (both holding that the *Heck* rationale applies to section 1985 claims).

In the present case, Horton seeks compensatory and punitive damages as well as injunctive relief pursuant to sections 1983 and 1985(3). Horton makes very far-reaching and general allegations against all the defendants. In summary, Horton alleges that Marovich gave Horton an extended sentence because Horton was black; (Am.Complt. ¶ 9(a).); that Pantle and Kamm chose not to provide to Horton a complete legal service, which caused him to suffer substantial prejudice and unnecessary conviction; (Am. Complt. ¶ 16.); and that Pucinski, through the clerks of the courts, did not send copies of legal documents to Horton, and thereby caused him "to suffer unnecessary prejudice and disadvantage in litigating the case(s) and causing the case(s) to be dismissed." (Am. Complt. ¶ 14.)

Horton claims that he was "actually deprived of [his] due process and equal protection rights by [defendants] during [his] actual trial and appeals, . . . and as a direct result thereof [Horton is] restrained of [his] liberty via method of unfair criminal trials, [and] appeals, which resulted to false imprisonment and immediate and irreparable damages and injuries." (Am.Complt. ¶ 6.) He also alleges that the discriminatory enforcement of the law constituted "an unfair trial and sentencing hearing . . . in violation of [his] rights, privileges and immunities . . . under the First, Fifth, Eighth and Fourteenth Amendments." (Am.Complt. ¶ 23(a).) Horton asks for damages because of his false imprisonment and resultant loss of employment and pursuit of happiness, and other injuries. (Am.Complt. at 33 ¶ 4.)

Considering all of the foregoing allegations, it is clear that Horton is seeking damages for what amounts to wrongful conviction or confinement. Horton's claimed injuries

are restraint of liberty, false imprisonment, loss of employment and pursuit of happiness, and other damages arising out of his restraint of liberty. For Horton to establish the basis for his damages claims, he necessarily would have to demonstrate the invalidity of his conviction and imprisonment. *See Heck,* — U.S. at ——, 114 S.Ct. at 2369. That is, if Horton's conviction and resultant imprisonment were lawful, he would have no injury.

Moreover, the court agrees with *Webb*'s holding that the *Heck* rule should apply to section 1985 claims. *See Webb,* 1994 WL 478508, *3, U.S.Dist. LEXIS 12150, *10. The same allegations support Horton's section 1985(3) claims as support his section 1983 claims. Consequently, the court finds that although Horton has raised his claims under the guise of 42 U.S.C. §§ 1983 and 1985(3), he really is attacking the legality of his conviction and confinement. *See Webb,* 1994 WL 478508, at *2, 1994 U.S.Dist. LEXIS 12150, at *5.

Unlawful conviction or confinement does not constitute an injury until the conviction or confinement has been invalidated. *Heck,* — U.S. at ——, 114 S.Ct. at 2372; *Webb,* 1994 WL 478508, at *3 1994 U.S.Dist. LEXIS, at *9. In the present case, Horton's conviction and resultant confinement have not been invalidated but rather have been affirmed repeatedly. Horton appealed his initial conviction, which the appellate court affirmed. He filed a petition for post-conviction relief, which the trial court dismissed; he appealed the dismissal, and the appellate court affirmed the trial court's decision. (*See* Pantle's Mot. to Dismiss at 6; *id.* Ex. A; *id.* Ex. B.) The federal court dismissed Horton's first petition for a writ of habeas corpus for failure to exhaust state remedies and denied Horton's second habeas corpus petition based on his procedural default in state court. (*See* Pantle's Mot. to Dismiss Ex. C, at 1, 8.) Thus, though Horton has pursued every avenue of relief, no court has invalidated his conviction or confinement. Furthermore, because Horton has pursued all of his available remedies, the court finds that no court will invalidate Horton's conviction or confinement.

Therefore, because Horton's conviction and confinement have not been and will not be invalidated in a manner prescribed by *Heck,* Horton has no cause of action under 42 U.S.C. § 1983 or § 1985(3). Accordingly, the court dismisses with prejudice Horton's damages claims against Marovich, Pantle, Kamm, and Pucinski.

### 2. Damages claims against Epton—the doctrine of judicial immunity

From Horton's complaint, it appears that Horton currently is imprisoned because of his 1984 conviction for armed robbery in the trial before Marovich. Thus, Horton's claims against Epton, who presided over Horton's 1971 murder trial, do not challenge the validity of Horton's current imprisonment. They do, however, call into question the validity of Horton's 1971 murder conviction. Thus, if the 1971 murder conviction was not "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus," then Horton's claims against Epton are "not cognizable." *Heck,* — U.S. at ——, 114 S.Ct. at 2372.

However, neither Horton, in his complaint, nor Epton, in his submissions to the court, sets forth the procedural history of Horton's 1971 murder case. Therefore, the court cannot determine whether Horton's claims against Epton are or are not cognizable under *Heck,* since the court does not know whether the conviction was invalidated in a manner prescribed in *Heck,* — U.S. at ——, 114 S.Ct. at 2372. Nonetheless, the court finds that it can decide Epton's motion to dismiss based on different reasoning.

Epton argues that Horton's cause of action against him is barred by the doctrine of judicial immunity. He contends that because he performed the acts that allegedly violated Horton's rights in the exercise of his judicial function, he cannot be sued by Horton for any injury arising out of those acts.

■ A judge is absolutely immune from liability in civil lawsuits for damages in connection with the performance of his or her

official duties. *Stump v. Sparkman*, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978). This is so even when the judge acted in error, maliciously, or in excess of his or her authority; the judge will be subject to liability only when he or she acted in the clear absence of all subject matter jurisdiction. *Stump*, 435 U.S. at 356–57, 98 S.Ct. at 1105. The concept of absolute judicial immunity is encompassed in civil rights actions under 42 U.S.C. §§ 1983 and 1985. *See Byrne v. Kysar*, 347 F.2d 734, 735 (7th Cir.1965) (nothing in the legislative history of the civil rights statutes "abrogates or impairs the traditional common law doctrine of judicial immunity"); *Mylett v. Mullican*, 992 F.2d 1347, 1352 (5th Cir.1993) (citing *Byrne*, 347 F.2d at 735) (42 U.S.C. §§ 1983 and 1985 embrace traditional notions of judicial immunity).

In the present case, Horton does not allege that Epton was acting in the clear absence of all subject matter jurisdiction. Rather, it is clear from Horton's complaint that Epton performed his allegedly wrongful acts in the course of his duties as a judge, while trying and sentencing Horton for his crime. Because Horton's civil lawsuit against Epton arises out of acts Epton performed while acting within the scope of his official duties, Epton is absolutely immune from the civil damages that Horton seeks.[2]

Accordingly, the court dismisses with prejudice Horton's damages claims against Epton.

### 3. Injunctive relief claims against Marovich, Pantle, Kamm, Pucinski, and Epton

In addition to claiming damages in excess of $20 million, Horton also requests that the court enjoin the defendants from discriminatorily enforcing the law against Horton. *Heck* appears to speak only to section 1983 damage claims, and Horton does not ask for immediate or speedier release, which would be precluded by *Preiser v. Rodriguez*, 411 U.S. 475, 488–90, 93 S.Ct. 1827, 1835–37, 36 L.Ed.2d 439 (1973) (habeas corpus is exclusive remedy of state prisoner who

challenges fact or duration of confinement and seeks release). Moreover, despite its broad protection of judges from liability for monetary damages, the doctrine of judicial immunity does not apply in lawsuits seeking preventive relief. *Scruggs v. Moellering*, 870 F.2d 376, 378 (7th Cir.), *cert. denied*, 493 U.S. 956, 110 S.Ct. 371, 107 L.Ed.2d 357 (1989). Thus, judges can be sued in an action seeking to enjoin them from pursuing a course of unlawful conduct. *Id.* Nonetheless, the court denies Horton's claim for injunctive relief on another ground—that it is moot.

To be entitled to injunctive relief, a plaintiff must establish that he "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). "Federal courts do not, as a rule, enjoin conduct which has been discontinued with no real prospect that it will be repeated." *Ragsdale v. Turnock*, 841 F.2d 1358, 1366 (7th Cir.1988).

In the present case, each defendant's allegedly unconstitutional conduct towards Horton ended when Horton's case in which the defendant was involved ended. Horton does not allege that defendants' illegal conduct towards Horton is still occurring. Nor does Horton allege that he is likely to appear again before Marovich or Epton; that Kamm or Pantle will represent him again; or that he will file another action in the Circuit Court of Cook County. *See Houston v. Sheahan*, 62 F.3d 902, 903 (7th Cir.1995) (request for injunctive relief by former jail inmate complaining of jail conditions was moot, where former inmate did not allege that he was likely to return to jail). Even if Horton had alleged that defendants' allegedly unconstitutional acts were capable of repetition, which he did not, his request for injunctive relief still would fail. *See Ragsdale*, 841 F.2d at 1365 (citations omitted) (plaintiff's conclusory assertions that the chal-

**2.** The doctrine of judicial immunity also would bar Horton's damages claims against Marovich, which the court has already disposed of. *See* section II.D.1., above.

**540**

lenged actions were capable of repetition were not sufficient to avoid mootness).

Accordingly, because nothing remains for the court to enjoin, the court finds that Horton has no claim for injunctive relief under 42 U.S.C. §§ 1983 and 1985(3).

### III. CONCLUSION

For the foregoing reasons, defendants George Marovich's, Saul Epton's, Barbara Kamm's, Kathleen Pantle's, Aurelia Pucinski's, and Richard Aztlan's motions to dismiss are granted with prejudice. George Marovich, Saul Epton, Barbara Kamm, Kathleen Pantle, Aurelia Pucinski, and Richard Aztlan are dismissed from this action as party defendants. On the court's own motion, plaintiff's complaint is dismissed without prejudice as to defendants William Heenan and Mel Allen. William Heenan and Mel Allen are dismissed from this action as party defendants.